RAWLS, Judge.
This appeal involves a negligence action brought by plaintiff-appellant, Katherine D. Rivers, a fare-paying passenger, against defendant-appellee, Jacksonville Coach Company, a public service corporation. After plaintiff presented her evidence and rested, the trial Court, upon motion of defendant, directed a verdict for defendant on the grounds that plaintiff had not made out a case. The sole question presented is whether or not plaintiff made out a prima facie case.
On August 22, 1959, plaintiff boarded a Jacksonville Coach Corporation bus in Jacksonville, Florida, and took a seat in the first short seat facing the front of the bus. Seated next to plaintiff was a friend of hers, one Lillie Bell Teel, and the two immediately began talking. In front of Lillie Bell Teel was a handrail which did not extend in front of plaintiff. The bus, after traveling for several city blocks without stopping, attempted to negotiate a turn and came to a sudden stop. Plaintiff fell or was thrown from her seat and claimed serious injuries. None of the other passengers were unseated, although Lillie Bell Teel testified that the bus made a sudden stop and that she had to brace herself in order to stay in her seat.
The trial Court seemingly was of the opinion that proof of a sudden stop of a city bus and a resulting injury to a fare-paying passenger was not a sufficient carrying forward of plaintiff’s case to require defendant to controvert same. We are of the opinion that the trial Court erred in light of the Supreme Court decision in Rogers v. Orlando Transit Co., 70 So.2d 551 (Fla.1954). The facts set out in that decision are amazingly similar to those in the instant cause, and while the controlling question there concerned contributory negligence, the principles of law enunciated by Mr. Justice Mathews, are applicable here. There, a woman passenger was seated in the middle of a bus with guardrails at each end of the seat which could be used for support. The testimony showed that the appellant was not using her hands for any particular purpose, that the bus came to a sudden stop for a red light and that appellant was injured. The Court stated on page 553:
“The bus driver knew, or should have known, of the existence of the stoplight and it was his duty in exercising proper care of his passengers to guard against the hazard of the stoplight. The passenger had the right to rely upon the bus driver and the driver's duty owed to the passengers. There is no duty placed upon the passenger who had paid her fare for safe transportation to be on constant guard for stoplights and the manner in which the bus driver may stop the bus for such lights. * * * It is sufficient to say that in approaching the street where there was a stoplight, the bus stopped suddenly, or with a jerk, which caused the appellant to fall and get hurt.”
As we understand this decision, it is not the duty of a fare-paying passenger to an *871 ticipate that a sudden stop will be made by a public service corporation, and to be on constant guard against the manner in which a driver may stop the bus; that once the passenger has come forth with evidence such as in the instant case or in the Rogers case, supra, that it is incumbent upon the public service corporation to show the circumstances surrounding such stop and to explain, if it can, the lack of any negligent act on the part of its employee driver.
Appellee strongly urges that the latest Florida decision upon this subject is Blackman v. Miami Transit Company, 125 So.2d 128 (Fla.App.1960), which dealt with a similar factual situation. The Court, speaking through Judge Charles Carroll, stated on page 130:
“Ruling out stops of extraordinary violence, not incidental to ordinary travel, as inapplicable to the stop which occurred here, the sudden stopping of the bus was not a basis for a finding that the bus was negligently operated, in the absence of other evidence, relating to the stop, of some act of commission or omission by the driver which together with the ‘sudden’ stop would suffice to show a violation of the carrier’s duty. This is so because a sudden or abrupt stop, which could be the result of negligent operation, could as well result from conditions and circumstances making it entirely proper and free of any negligence.”
By finely splitting hairs and pointing out minute factual differences between the Blackman decision and the Rogers decision, we could possibly distinguish the two cases; however, identical facts will never appear in two separate cases, and to seize upon a minute factual conflict in order to distinguish cases, in our opinion, would only serve to further confuse the law of this State.
Plaintiff made out a prima facie case of an unexplained sudden stop in the operation of a city bus, and offered evidence toward proving the falling or being thrown out of a seat by a fare-paying passenger and a resultant injury to the passenger in the Rogers and Blackman cases and in the instant cause. The critical query at this stage of the instant case is whether it was necessary for plaintiff to offer evidence pertaining to circumstances surrounding the sudden stop; or in the alternative, whether it was then incumbent upon defendant to assume this burden. It is our opinion that we are bound by the decision in the Rogers case which answered this question in favor of the fare-paying passenger (plaintiff) ; therefore, the trial Court erred in directing a verdict for defendant.
We do want to make it clear that the carrier is not an insurer of its passengers[1] and is not liable “per se” for a sudden stop; that it will be afforded the opportunity of explaining the circumstances sur *872 rounding the necessity for a sudden stop; and that if, at that time, it is apparent that no negligent act was committed by it, then ■such a verdict and judgment as rendered in this cause would be in order.
Reversed, with directions to proceed further in accordance with this opinion.
CARROLL, DONALD K., Chief Judge, and WIGGINTON, J., concur.

. See Swilley v. Economy Cab Co. of Jacksonville, 46 So.2d 173, 177 (Fla.1950) wherein it is stated: “Though the law requires of a common carrier that it exercise the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions and circumstances then affecting the passenger and the carrier during the contract of carriage, Florida Ry. Co. v. Dorsey, 59 Fla. 260, 52 So. 963, the common law rule of duty and liability sustained by public policy does not extend to the point of charging the carrier and its servants with the necessity for possessing superhuman powers of anticipation or of exercising such powers in a threatened emergency. To have held the taxicab company liable for the safety of its passenger under the circumstances shown by the first count of the declaration would have been to have made of the defendant an absolute insurer of the safety of its passenger under a condition not of its own making, extending even to the point of making it an insurer against the possible negligence of some third person. This the law does not exact of a common carrier merely by reason of the fact that it accepts a person for carriage.”